UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                                         )
DTZ., INC., UGL LIMITED, and                         )
UGL EUROPE LIMITED,                                   )
                                                                         )
            Plaintiffs,                                              )
                                                                         )
v.                                                                      )   Civil No. 1:13-cv-10906-PBS
                                                                         )
UG2 LLC, LOUIS LANZILLO,                           )
JOHN CORREIA, JEFFREY PETERSON,        )
ROBERT RYAN, ARMANDO LEZAMA,         )
ROBERT DESAULNIERS, SCOTT BURNELL, )
and JANET GUISTI,                                          )
                                                                         )
            Defendants.                                          )
_____)
                                                                         )
UG2 LLC, LOUIS LANZILLO,                           )
JOHN CORREIA, JEFFREY PETERSON,        )
ROBERT RYAN, ARMANDO LEZAMA,         )
ROBERT DESAULNIERS, and                         )
SCOTT BURNELL,                                           )
                                                                         )
            Plaintiffs-in-Counterclaim,                  )
                                                                         )
v.                                                                      )
                                                                         )
DTZ, INC., UGL LTD., and                                )
ANTONIO ANDRADE,                                     )
                                                                         )
            Defendants-in-Counterclaim.             )
_____)

**WALTER W. CROW'S MEMORANDUM IN OPPOSITION TO
<u>PLAINTIFFS' MOTION TO DISQUALIFY</u>**

Walter W. Crow has devoted his entire career to the facility services business.  He started as a part-time cleaner, worked his way through law school, and became general counsel to the North American division of the plaintiff, UGL Limited.  During his time with UGL and its

predecessor, UNICCO, he was not involved in the employment and trademark disputes that are the subject of this litigation.

Mr. Crow's employment with UGL ended in 2011. He recently became outside general counsel to a startup company, UG2, which is one of UGL's competitors. UG2 is Mr. Crow's only client and his only source of income. UGL has filed a motion to disqualify Mr. Crow from advising UG2 and the other defendants about this case. (See Docket No. 62.) Mr. Crow respectfully requests the Court to deny the motion because his work on this case is not substantially related to his previous representation of UNICCO and UGL.

## BACKGROUND

In 1975, Mr. Crow started working in the facility services business as a part-time cleaner. (Crow Aff. ¶ 6.) He joined UNICCO in 1986. Id. at ¶ 7. He worked during the day and attended law school at night. Id. at ¶ 9. Mr. Crow started UNICCO's legal department in 1997, and became its general counsel in 2003. Id. at ¶¶ 10-12.

In this case, the plaintiffs are seeking to enforce 18 separate documents against their former employees. (See Docket No. 24.) Mr. Crow played no role in drafting most of these documents:

- the UGL Services Unicco Operations Employee Handbook (Docket No. 24-1);

- the Confidentiality, Noncompetition, and Nonsolicitation Agreement (Docket Nos. 24-3, 24-6, & 24-9);

- the UNICCO Service Company Agreement (Docket No. 24-11);

- the UNICCO Non-Competition Agreement (Docket Nos. 24-13 & 24-14); and

- an Agreement dated March 16, 1990 (Docket No. 24-18).

(Crow Aff. ¶¶ 14, 18-20.)

In 2000, Mr. Crow assisted in drafting UNICCO's Contract for the Protection of Business Interests, which some of the defendants ultimately signed. Id. at ¶ 14. After the draft was completed, UNICCO's human resources department used the document as a template to send to hundreds of new employees. Id. at ¶ 16. The human resources department was responsible for hiring employees, negotiating their terms of employment, and having them sign the contract. Id. at ¶ 15. The human resources department normally signed the contract on behalf of UNICCO.[1] (See Docket Nos. 24-4, 24-5, 24-7, 24-10, 24-12, 24-15, 24-16, & 24-17.)

Mr. Crow did not hire the defendants. (Crow Aff. ¶ 13.) Outside of the legal department—which none of the defendants worked in—he was not responsible for hiring employees to work for UNICCO. See id. Mr. Crow did not negotiate employment terms with the defendants or other employees. Id. at ¶ 30. He did not have the defendants or other employees sign their contracts. Id. at ¶ 17. He did not sign any of the defendants' contracts on behalf of UNICCO. (See generally Docket No. 24.) He had no input into the defendants' compensation. Id. at ¶ 13. After Mr. Crow gave the Contract for the Protection of Business Interests to the human resources department in 2000, his only involvement was to update it to reflect changes in the company's name. Id. at ¶ 17.

During Mr. Crow's time at UNICCO, there were five lawsuits involving restrictive covenants. Id. at ¶ 34. Four of the lawsuits arose from contracts that are not at issue in this case. Id. The fifth lawsuit involved the Contract for the Protection of Business Interests. Id. Outside counsel handled that matter, and Mr. Crow's direct involvement was limited. Id.

While Mr. Crow was working for UNICCO, he also oversaw outside counsel in handling one intellectual property-related lawsuit, which involved the "UNICCO" trademark. Id. Outside

---

[1] UNICCO's chief operating officer, George Keches, signed one of the contracts at issue in this case. (See Docket No. 24-8.)

3

counsel administered the company's trademarks and monitored them for possible infringement. Id.

United Group, Ltd., which is now known as UGL, purchased UNICCO in 2007. Id. at ¶ 22. In 2008, Vanessa Eustace took over as UNICCO's general counsel, and Mr. Crow became UGL's general counsel for North America. In this role, his practice focused on risk management, mergers and acquisitions, and contract negotiation. Id. at ¶ 27. He did not handle restrictive covenant or trademark matters for DTZ. See id. at ¶ 34. His employment ended in 2011. Id. at ¶ 15.

In February 2013, Ms. Eustace briefly discussed with Mr. Crow the plaintiffs' trademark infringement claim against UG2. Id. at ¶ 44. The plaintiffs became aware of Mr. Crow's involvement in this litigation on April 18, 2013, when he attended a hearing. Id. The plaintiffs sent a letter to Mr. Crow on May 7, 2013, asking that he terminate his representation of the defendants, and Mr. Crow responded on May 10, 2013 that he was not obligated to do so. Id. The plaintiffs then waited nearly two more months until they filed this motion late in the afternoon of July 3, 2013. (See Docket No. 62.)

## LEGAL STANDARD

The Massachusetts Rules of Professional Conduct apply to lawyers who appear before this Court.[2] Local Rule 83.6(4)(B). The plaintiffs in this case are relying on Rule 1.9(a), which governs conflicts of interest involving former clients. The rule states that: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same

---

[2] Mr. Crow has not entered an appearance in this case, and is not admitted to practice before this Court. Crow Aff. ¶ 4. He is not a litigator; his role is to advise the defendants on this case. See id. at ¶ 44.

or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

The plaintiffs bear the burden of proof on their motion. ebix.com, Inc. v. McCracken, 312 F. Supp. 2d 82, 90 (D. Mass. 2004) (citations omitted) (concluding that party alleging conflict has burden "to prove its existence and precise character"). To meet this burden, they must show that: (1) Mr. Crow's current representation of the defendants is adverse to the interests of his former clients; and (2) the two representations are "substantially related." Id. at 89 (quoting Adoption of Erica, 426 Mass. 55, 61 (1997)).

Recognizing a "strong policy against disqualification of counsel in Massachusetts," this Court has cautioned that:

> [D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. Such a measure is generally appropriate only when continued participation by the attorney taints the legal system or the trial of the cause before it. Courts should be alert that the Canons of Ethics are not brandished for tactical advantage.

Inverness Med. Switzerland GMBH v. Acon Labs., Inc., No. 03-11323-PBS, 2005 WL 1491233, at *4, 12 (D. Mass. June 23, 2005) (Saris, J.) (alteration in original) (citations omitted) (denying motion to disqualify); see also Comment 15 to Rule 1.7 (stating that conflict of interest allegation "should be viewed with caution . . . for it can be misused as a technique of harassment").

## ARGUMENT

There is no dispute that UGL and UNICCO are Mr. Crow's former clients. Mr. Crow also agrees that their interests are adverse to his representation of the defendants. The plaintiffs fail to establish, however, that Mr. Crow's representation of the defendants is substantially related to his previous representation of UGL and UNICCO.

In deciding whether two matters are substantially related, Courts focus on whether the matters' overlap or similarity would create an "intolerably strong temptation" to betray client confidences. ebix.com, Inc., 312 F. Supp. 2d at 90 (citation omitted). The test is whether it is "reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter." Id. (citation omitted).

The plaintiffs' months-long delay in filing this motion is inconsistent with their claim that they are greatly concerned that Mr. Crow has privileged information which he will share with the defendants. By early February 2013, the plaintiffs knew that Mr. Crow was serving as outside general counsel to UG2. At that time, Mr. Crow briefly discussed the plaintiffs' trademark infringement claim with DTZ's general counsel, Ms. Eustace. Mr. Crow observed a temporary restraining order hearing in this matter on April 18, 2013. In early May 2013, the plaintiffs asked Mr. Crow to end his representation of the defendants, he refused, and he considered the matter closed. It was not until July 3, 2013 that the plaintiffs moved to disqualify Mr. Crow. The plaintiffs' delay undercuts any contention that they are concerned about Mr. Crow's disclosure of privileged information to the defendants. Rather, their delay suggests that this motion is a litigation tactic by a $2 billion plaintiff against a small startup company, aimed at depriving the defendants of the benefit of Mr. Crow's 37 years' experience in the facility services business.

DTZ claims that Comment 2 to Rule 1.9 precludes Mr. Crow from advising the defendants. This comment provides that:

> The scope of a "matter" for purposes of this Rule may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction,

6

> subsequent representation of other clients with materially adverse interests clearly is prohibited.  On the other hand, <u>a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client</u>.  Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction.  The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

(emphasis added.)  The plaintiffs quote this comment in their memorandum, with the glaring exception of the underlined sentence, which completely favors Mr. Crow's position. (Pls.' Mem. 13.)  As a result of this omission, the plaintiffs fail to tell the Court that Mr. Crow is fully entitled to represent the defendants in the same type of matter as he previously handled for UNICCO and UGL, provided that the matters are distinct from each other. Because this litigation does not share common facts with Mr. Crow's previous representation of UNICCO and UGL, the plaintiffs' motion must be denied.

In an attempt to link this matter to Mr. Crow's previous representation, the affidavit of Vanessa Eustace paints with a broad brush.  Ms. Eustace offers a long list of substantive areas in which Mr. Crow purportedly gave advice during his years as general counsel.  (Eustace Aff. ¶ 13.)  Her affidavit can be contrasted with Mr. Crow's affidavit, which offers specific details, to the best of his knowledge, about the employment and trademark matters that he handled.

From 1997 to 2008, Mr. Crow handled five restrictive covenant matters for UNICCO. (Crow Aff. ¶ 34.)  None of those matters involved the defendants. <u>Id.</u>  Only one of them involved a contract that is at issue in this case, the Contract for the Protection of Business Interests, and Mr. Crow delegated primary responsibility for that matter to outside counsel. <u>Id.</u> Although he knew the individual defendants in this case as coworkers, he was not involved in:

7

hiring them; negotiating the terms of their employment; deciding their compensation; promoting them; or terminating them.  Id. at ¶ 32.  After 2008, when Mr. Crow became UGL's general counsel for North America, he had no further responsibility for restrictive covenant matters at UGL UNICCO.  Id. at ¶ 27.  Under Comment 2 to Rule 1.9, his previous representation of UNICCO in a series of employment matters, which were unrelated to this matter, does not preclude him from advising the defendants in this litigation.

The plaintiffs assert that Mr. Crow is "switching sides" by advising the defendants after having drafted the Contract for the Protection of Business Interests.  (Pls.' Mem. 15-17.)  This argument is not factually or legally accurate.  After Mr. Crow assisted in drafting the contract template 13 years ago, in 2000, he provided it to UNICCO's human resources department.  The human resources department then handled all aspects of contracting with the defendants.  The human resources department obtained the defendants' signatures and routinely signed the contract for UNICCO, with the exception of one contract that George Keches signed.

During Mr. Crow's employment with UNICCO and UGL, he did not handle any disputes involving the defendants.  Mr. Crow's employment with UGL ended in 2011.  The plaintiffs assert that after he had left, in 2012 and 2013, the defendants violated their restrictive covenants and infringed on the plaintiffs' trademark.  It is difficult to imagine how Mr. Crow could possess privileged information about events that occurred after his departure.  This is not a situation that warrants the "drastic measure" of disqualification.  See Inverness Med. Switzerland GMBH, 2005 WL 1491233, at *4 (Saris, J.).

The plaintiffs' position is also contradicted by ebix, where (as in this case) the plaintiff employer was seeking to enforce a non-compete agreement against its former employee.  312 F. Supp. 2d at 91-94.  Two lawyers had done general research for the employer on non-compete

agreements, but there was no evidence they had advised the employer on the specific agreement that the employee had signed. Id. After the lawyers began representing the employee, the employer moved to disqualify them. Id. This Court denied the motion to disqualify because the lawyers had not represented the employer "with regards to that specific agreement." Id. at 94. In other words, the matters were not substantially related because the lawyers' previous representation of the employer, on general issues concerning non-compete agreements, did not relate to the specific agreement that the employee had signed. Id.

The plaintiffs rely on Alere Inc. v. Church & Dwight Company, but that case does not help their position because Judge Woodlock denied a motion to disqualify. Alere emphasized that "a lawyer has received substantial material information only when the facts demonstrate that directly relevant information was disclosed." No. 10-10027-DPW, 2012 WL 1098420, at *7 (D. Mass. Mar. 31, 2012). In that case, the defendant had disclosed certain technology to its lawyers in 2004. Id. The Court concluded that this information was not "substantial," and that disqualification was not required, in view of the fact that the technology was not confidential information. Like the technology in Alere, the Contract for the Protection of Business Interests, which Mr. Crow drafted 13 years ago, hardly can be considered confidential. The plaintiffs have sent the contract to hundreds of employees and prospective employees.[3] They also have filed the contract with the Court, which means that anyone can access it.

Mr. Crow's intellectual property work for UNICCO has even less of a connection to this litigation than his employment work. Mr. Crow was involved in one lawsuit to protect the

---

[3] In dicta, ebix and Alere stated that they did not involve situations where lawyers had drafted contracts and later attempted to challenge them. The plaintiffs may argue that is precisely what Mr. Crow has done. In this case, however, Mr. Crow assisted in preparing a form for the human resources department to use. Unlike the situation that ebix and Alere contemplated, Mr. Crow did not negotiate contract terms with any of the defendants.

"UNICCO" trademark, which is not at issue here. Mr. Crow never handled intellectual property matters for the plaintiff, DTZ. He should be permitted to advise the defendants on the trademark issues in this case, because his previous representation regarding the UNICCO trademark is unrelated to this matter.

## CONCLUSION

The effect of allowing the plaintiffs' motion would be to separate the defendants from their trusted counsel, and to separate Mr. Crow from his livelihood. Mr. Crow has worked his entire career in this industry. That experience—and not any privileged information—makes him a valuable resource to the defendants. This Court and others have expressed hesitation to order the termination of an attorney-client relationship, in view of the fact that motions to disqualify are often used as a litigation tactic. That risk is particularly significant here, where the plaintiffs knew about Mr. Crow's representation of the defendants yet delayed five months in filing their motion to disqualify.

Mr. Crow respectfully requests the Court to deny the plaintiffs' motion.

## REQUEST FOR ORAL ARGUMENT

Under Local Rule 7.1(d), Mr. Crow requests an oral argument on this motion.

Walter W. Crow,

By his attorneys,

/s/ Alan D. Rose
Alan D. Rose (BBO #427280)
Brian D. Lipkin (BBO #673850)
Rose, Chinitz & Rose
One Beacon Street, 23rd Floor
Boston, MA  02108
(617) 536-0040
Fax: (617) 536-4400
adr@rose-law.net
bdl@rose-law.net

Dated: July 26, 2013

## **CERTIFICATE OF SERVICE**

I certify that I served this document by filing it through the ECF system on July 26, 2013.

/s/ Brian D. Lipkin